NOT DESIGNATED FOR PUBLICATION

No. 127,909

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MURDOCK JACOB DECHANT,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Randal L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM: Murdock Jacob Dechant appeals his conviction of criminal possession of a firearm. He contends that the Kansas criminal possession of a firearm statute violates the Second Amendment to the United States Constitution and section 4 of the Kansas Constitution Bill of Rights. He also asserts that the district court abused its discretion by admitting a photograph of him with a firearm because the State failed to lay proper foundation for it. After careful review, we affirm.

1

FACTS AND PROCEDURAL BACKGROUND

In mid-January 2023, Dechant was on parole, which he had been granted in a separate case. He informed his parole officer, Emily Underwood, that he was in a relationship with Kaley James and asked for permission to move in with James, as permission to move was a condition of his parole. Another condition of Dechant's parole (and his prior convictions) prohibited him from possessing a firearm.

After Dechant made that request, Underwood received an email from staff at El Dorado Correctional Facility. That email included a photo showing Dechant with what looked to be a firearm in his waistband. The photo also showed a female, believed to be James. This photo had been emailed to another inmate at the prison, and the prison intercepted it. Underwood testified that she was familiar with the prison's policy of intercepting and reviewing emails sent to inmates and that she recognized Dechant in the photo. Other than that, she did not know much about the photo.

Soon thereafter, Dechant informed Underwood that he had moved in with James. Underwood spoke with Dechant and James to confirm the address and James' information. Then, because of the photograph, Underwood requested a search of Dechant's new residence. Dechant consented to the search, in keeping with another condition of his parole.

Dechant went with officers to James' and his residence, and James let the officers in. The officers cleared the residence then had Dechant and James sit on the front porch while they searched the residence. One officer opened an unzipped flap of a black duffel bag that was on the couch. The duffel bag was next to a black backpack and a blue draw-string bag. Just under the closure flap of the duffel, an officer found a firearm.

2

The officers then exited the residence, got a search warrant, and arrested Dechant. Dechant and James claimed they knew nothing about any firearms in the residence.

While executing the search warrant, the officers photographed and collected the firearm found in the duffel. One officer testified that it was a "distinct" firearm with black grips and areas of green on its frame. The firearm was identified as a German Sports Gun brand .22 caliber semiautomatic pistol. Officers searched the duffel and found men's toiletries, men's clothing, and a four-pack of silicone men's rings, one of which was missing. At the time of his arrest, Dechant wore a similar ring, which he asked to leave at the residence.

The State charged Dechant with criminal possession of a weapon by a convicted felon under K.S.A. 2022 Supp. 21-6304(a)(2), a severity level 8 nonperson felony.

Before trial, Dechant moved to dismiss the charge against him, arguing that K.S.A. 2022 Supp. 21-6304(a)(2) impermissibly infringed on his right to bear arms under the Second Amendment to the United States Constitution and section 4 of the Kansas Constitution Bill of Rights . The district court denied this motion, explaining the long-standing histories of both federal and state laws barring felons from possessing firearms.

At trial, the firearm was admitted into evidence and one of the officers testified, without objection, that the firearm was "believed to be the firearm in the photo with Mr. Dechant." The firearm was swabbed for DNA and checked for fingerprints, though no DNA testing was ultimately done and no fingerprints were identified.

Unfortunately, the jury was not able to reach a verdict and the district court was required to declare a mistrial. Shortly thereafter, Dechant was found in contempt of court because he had tried to contact one of the jurors during deliberations, which made that juror fear for her safety.

3

At Dechant's second trial, various witnesses testified to the above facts. The State also admitted two video calls Dechant had made from jail after his arrest. In the first call, Dechant discussed people and events related to his case, then stated "they filed a warrant to go back into the house because I would not give them permission to take my gun." And in the second call, Dechant made several statements referring to his gun.

Before trial, the parties stipulated to Dechant's prior felony conviction:

"1. The Defendant has been previously convicted of a felony under K.S.A. 21-5413(c)(3)(D) on July 7, 2016, and that prior felony prohibited the Defendant from possessing a weapon on February 9, 2023.

"2. The Defendant was not found by the convicting court to have used a firearm in the commission of the prior crime.

"3. Less than three years have elapsed since the Defendant satisfied the sentence imposed or the terms of any diversion agreement for such crime, or was discharged from probation, a community corrections service program, parole, post-release supervision, conditional release or suspended sentence."

The parties also agreed that "the defendant has not had the prior crime expunged, nor has he been pardoned for such crime."

After deliberation, the jury found Dechant guilty as charged. At Dechant's sentencing hearing, the district court denied Dechant's motions for a new trial and for a dispositional departure or, alternatively, a durational departure. Based on Dechant's admitted criminal history score of B, the district court sentenced him to 20 months' imprisonment.

Dechant timely appeals.

4

Dechant raises two arguments. First, he contends that Kansas' criminal possession of a firearm statute violates the Second Amendment to the United States Constitution and section 4 of the Kansas Constitution Bill of Rights. Second, he argues that the district court abused its discretion by admitting a photograph of Dechant with a firearm because the State did not lay a proper foundation.

I.    *Is the criminal possession of a firearm by a convicted felon statute facially unconstitutional?*

First, Dechant argues the criminal possession of a firearm statute violates the Second Amendment to the United States Constitution and section 4 of the Kansas Constitution Bill of Rights. He argues that these two constitutional provisions should be interpreted differently.

In response, the State argues that Dechant has no standing to raise this claim because he was not convicted under K.S.A. 21-6304(a)(3)(A)—the sole statute that he contends is unconstitutional. Alternatively, the State argues that the Second Amendment and section 4 are interpreted the same, and so, under United States Supreme Court precedent, K.S.A. 21-6304(a)(2) is not unconstitutional. But even if the provisions are interpreted differently, K.S.A. 21-6304(a)(2) passes strict scrutiny because the statute is narrowly tailored, and protecting Kansans from dangerous felons is a compelling state interest.

*Standing*

We first address the State's argument that Dechant lacks standing. "[I]f a person does not have standing to challenge an action or to request a particular type of relief, then

5

'there is no justiciable case or controversy' and the suit must be dismissed." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008) (quoting *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]).

Under Kansas' two-part standing test, a party must demonstrate (1) they have suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct. A party establishes a cognizable injury (i.e., an injury in fact) when they suffer some actual or threatened injury as a result of the challenged conduct. *League of Women Voters of Kansas v. Schwab*, 317 Kan. 805, 813, 539 P.3d 1022 (2023).

Dechant was convicted of unlawful possession of a firearm under K.S.A. 21-6304(a)(2), but his brief on appeal argues only that K.S.A. 21-6304(a)(3)(A) is unconstitutional. The State argues that this disconnect deprives Dechant of standing. And ordinarily, we would agree. But in his reply brief, Dechant's attorney explains that he inadvertently cited the wrong statute and meant to cite K.S.A. 21-6304(a)(2). He adds that the substance of his arguments implicates all provisions of K.S.A. 21-6304(a).

Because the citation error was clarified in the reply brief and it did not cause any prejudice to the State's argument (as shown by its extensive development of the merits in its brief), we excuse the error and opt to reach the merits of Dechant's constitutional challenge in the interests of justice and judicial economy.

*Standard of Review*

An appellate court exercises unlimited review over whether a statute is constitutional. *State v. Harris*, 311 Kan. 816, 821, 467 P.3d 504 (2020). To interpret constitutional provisions, we begin with the language used:

"'[T]he best and only safe rule for ascertaining the intention of the makers of any written law, is to abide by the language they have used; and this is especially true of written constitutions, for in preparing such instruments it is but reasonable to presume that every word has been carefully weighed, and that none are inserted, and none omitted without a design for so doing.' [Citation omitted.]" *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 622-23, 440 P.3d 461 (2019).

*Analysis*

Dechant claims that his crime of conviction—criminal possession of a firearm by a convicted felon under K.S.A. 21-6304(a)(2)—is facially unconstitutional because it violates both the Second Amendment and section 4. This statute provides:

> "(a) Criminal possession of a weapon by a convicted felon is possession of any weapon by a person who:
>
> . . . .
>
> "(2)(A)(i) Has been convicted of a person felony, . . . under the laws of Kansas or a crime under the law of another jurisdiction which is substantially the same as such person felony; . . .
>
> . . . .
>
> "(B) was not found by the convicting court to have used a firearm in the commission of such crime; and
>
> "(C) less than three years have elapsed since such person satisfied the sentence imposed or the terms of any diversion agreement for such crime, or was discharged from probation, a community correctional services program, parole, postrelease supervision, conditional release or a suspended sentence." K.S.A. 2022 Supp. 21-6304(a)(2).

*The Second Amendment and K.S.A. 21-6304(a)(2)*

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570, 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), the United States Supreme Court examined the Second Amendment in depth. The *Heller* Court explained that the Second Amendment was not a novel principle, but a codification of rights grounded in history and discussed that Americans valued the right to bear arms for both self-defense and hunting purposes. The *Heller* Court discussed that prior precedent described the Second Amendment right as """bearing arms for a lawful purpose""" and stated that the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." 554 U.S. at 620, 625.

In *Heller*, the United States Supreme Court found unconstitutional a law that prohibited possessing a handgun in the home, explaining "the inherent right of self-defense has been central to the Second Amendment right" and the law impermissibly prohibited the "defense of self, family, and property." 554 U.S. at 628-29. But the Court clarified that protections guaranteed under the Second Amendment are not unlimited. See 554 U.S. at 595. *Heller* emphasized that the Second Amendment does *not* prohibit restrictions on possession of firearms by people who have been convicted of felonies. 554 U.S. at 626. The Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by *felons* and the mentally ill." (Emphasis added.) 554 U.S. at 626. See *United States v. Griffith*, 928 F.3d 855, 870-71 (10th Cir. 2019) (citing *Heller* in rejecting claims that the Second Amendment grants felons an absolute right to carry a weapon so defendant's conviction for felon in possession of a firearm should be reversed). As many courts have recounted in their opinions, categories of people have historically been disarmed despite not having engaged in violent behavior. See, e.g., *United States v. Jackson*, 110 F.4th 1120, 1126-27 (8th Cir. 2024) (discussing colonial regulations that prohibited certain classes of persons from owning firearms, such as those who fail to swear a loyalty oath); see also *Commonwealth v. Jenkins*, 328 A.3d 1076, 1092 (Pa. Super. Ct. 2024) (highlighting firearms prohibitions relating to surety laws and vagrants).

After *Heller*, the United States Supreme Court applied a historical-tradition test for applying the Second Amendment:

"[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' [Citation omitted.]" *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 24, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

*Bruen* held "consistent with *Heller* and *McDonald*, . . . the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. And it characterized *Heller* and *McDonald v. Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), as "recogniz[ing] that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." 597 U.S. at 8-9; see *People v. Burns*, 250 N.E.3d 305, 312 (Ill. App. Ct. 2024) (holding that *Bruen* does not apply to defendants who are felons because "[t]he second and fourteenth amendments protect the right of 'law-abiding citizens' to possess handguns") (quoting *Bruen*, 597 U.S. at 9-10).

The United States Supreme Court applied the *Bruen* test in *United States v. Rahimi*, 602 U.S. 680, 692-93, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). *Rahimi* held: "When an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment." 602 U.S. at 680. And that "[s]ince the Founding, the Nation's firearm laws have included regulations to stop individuals who threaten physical harm to others from misusing firearms." 602 U.S. at 680. It thus upheld the facial constitutionality of 18 U.S.C. § 922(g)(8), which prohibits individuals subject to a domestic violence restraining order from possessing a firearm. 602 U.S. at 693.

9

The Kansas Supreme Court recently applied the *Bruen* test in finding K.S.A. 21-6301(a)(18) facially constitutional under the Second Amendment. That statute prohibits individuals from possessing a firearm for five years after being convicted of a misdemeanor domestic violence offense. *State v. McCray*, 321 Kan. 316, 322, 579 P.3d 126 (2025). *McCray* thus did not apply any means-end analysis but held that this statute fits within America's tradition of firearm regulation:

> "A conviction for misdemeanor domestic violence within the preceding five years is sufficient, as a matter of law, to establish that the offender poses a threat of physical violence to others. The statute is therefore consistent with America's tradition of firearm regulation and constitutional under the Second Amendment to the United States Constitution." 321 Kan. at 317.

Together, these precedents teach that the Second Amendment does not affect the longstanding prohibition against felons possessing firearms. *Heller*, 554 U.S. at 626; accord *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"). And even temporary prohibitions against misdemeanants possessing firearms may be upheld when they have been found by a court to pose a credible threat to the physical safety of another. *Rahimi*, 602 U.S. at 693. Because Dechant is a convicted felon, he may be categorically prohibited from possessing a firearm under *Heller* consistent with the Second Amendment.

Given this precedent, we have no trouble concluding that K.S.A. 21-6304(a)(2) is facially constitutional under the Second Amendment.

*Section 4 and K.S.A. 21-6304(a)(2)*

Dechant also contends that K.S.A. 21-6304(a)(2) violates section 4 of the Kansas Constitution Bill of Rights. The relevant portion of section 4 states, "A person has the

10

right to keep and bear arms for the defense of self, family, home and state, for lawful hunting and recreational use, and for any other lawful purpose." Dechant argues that the different language in section 4 creates stronger guarantees than those in the Second Amendment, mandating reversal of his conviction. He invites us to interpret section 4 to protect an absolute right to possess firearms regardless of a person's status as a felon because mere possession of a firearm does not increase the threat to the public, as use of a firearm would.

The State counters that we should interpret section 4 the same way we interpret the Second Amendment, thus K.S.A. 21-6304(a)(2) does not violate section 4. Alternatively, the State argues that even if we interpret section 4 differently than the Second Amendment, K.S.A. 21-6304(a)(2) still passes strict scrutiny because the statute narrowly limits the time and circumstances under which an offender is prohibited from possessing a firearm, and this proscription is necessary to protect Kansans from dangerous felons, which is a compelling state interest and part of the underpinning of our justice system.

The Kansas Supreme Court has not decided whether K.S.A. 21-6304(a)(2) withstands a facial constitutional challenge under section 4. Our court has, however, decided that question. See, e.g., *State v. Hall*, 65 Kan. App. 2d 369, 389, 564 P.3d 786 (finding section 4 of the Kansas Constitution Bill of Rights is not absolute but is narrowly tailored to advance compelling state interests), *rev. denied* 320 Kan. 864 (2025); *State v. Foster*, 60 Kan. App. 2d 243, 261-62, 493 P.3d 283 (2021) (Arnold-Burger, C.J., concurring) (concluding that K.S.A. 21-6304[a][2], would be facially constitutional under section 4); see also *State v. McKinney*, 59 Kan. App. 2d 345, 354-57, 481 P.3d 806 (rejecting facial challenge to K.S.A. 2020 Supp. 21-6301[a][13], which prohibits the possession of a firearm by a person who is or has been mentally ill and subject to involuntary commitment for care and treatment), *rev. denied* 313 Kan. 1044 (2021). In each case, our court has found that section 4 is not facially unconstitutional.

11

But our court has split on whether we interpret section 4 the same as the Second Amendment. Compare *Hall*, 65 Kan. App. 2d at 379 (interpreting section 4 as providing distinct protections from the Second Amendment and interpreting that section independently from the Second Amendment), with *McKinney*, 59 Kan. App. 2d at 354, (interpreting section 4 as providing the same protection as the Second Amendment, and interpreting section 4 in lockstep with the Second Amendment). The Kansas Supreme Court denied petitions for review in both cases.

Still, both panels of our court reached the same conclusion—that the challenged statutes were not facially unconstitutional under section 4 of the Kansas Constitution. We find it unnecessary to decide whether *McKinney* or *Hall* or some other approach is the proper analysis, because no matter which approach we use, the result is the same— K.S.A. 21-6304(a)(2) does not violate section 4.

If we interpret section 4 in "lockstep" with the Second Amendment, as the *McKinney* panel did, then K.S.A. 21-6304(a)(2) is constitutional because the protections guaranteed under the Second Amendment (and therefore section 4) are not unlimited. See *Heller*, 554 U.S. at 595. A prohibition on possession of firearms for a felon is permissible. See 554 U.S. at 626 (stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill"); *McKinney*, 59 Kan. App. 2d at 356-57.

Dechant offers no persuasive reason in the history of the Kansas Constitution or in our caselaw that would suggest a different analytic framework should apply to distinguish section 4 from the Second Amendment. See *State v. Boysaw*, 309 Kan. 526, 536-37, 439 P.3d 909 (2019) (describing the burden that Dechant bears here); see also *Hall*, 65 Kan. App. 2d at 393 (Pickering, J., concurring) (rejecting the claim that section 4 should be interpreted differently than the Second Amendment).

But even if we interpret section 4 independently from the Second Amendment, as the *Hall* majority did, and apply the strict scrutiny test to K.S.A. 21-6304(a)(2), as Dechant invites us to do, we would find that the government's infringement of Dechant's constitutional right is narrowly tailored to serve a compelling government interest. See *State v. Ryce*, 303 Kan. 899, 957, 368 P.3d 342 (2016).

The challenged statute applies only to those who have been convicted or adjudicated of committing certain person felonies in Kansas (or in another jurisdiction where the conviction was "substantially the same" as a listed person felony). See K.S.A. 2022 Supp. 21-6304(a)(2)(A)(i)-(ii). The person cannot have been found by the convicting court to have used a firearm in his or her prior conviction. K.S.A. 2022 Supp. 21-6304(a)(2)(B). And the prohibition against possessing a weapon applies for only three years following the satisfaction of "the sentence imposed or the terms of any diversion agreement for such crime, or was discharged from probation, a community correctional services program, parole, postrelease supervision, conditional release or a suspended sentence." K.S.A. 2022 Supp. 21-6304(a)(2)(C).

Thus the restriction here is short and begins from the earliest possible date depending on the offender's history, prior sentence, and behavior. Compare K.S.A. 2022 Supp. 21-6304(a)(1) (lifetime prohibition on arms possession for those convicted of person felonies or drug crimes and who were found to be in possession of a firearm at the time), with K.S.A. 2022 Supp. 21-6304(a)(3) (eight-year prohibition on arms possession for "serious" person felonies and drug offenses), and K.S.A. 2022 Supp. 21-6304(a)(4) (three-month prohibition for certain other nonperson felonies).

K.S.A. 21-6304(a)(2) does not infringe on one's right to self-defense. Our State's self-defense statutes do not require lawful possession for self-defense to apply. See K.S.A. 21-5222 (self-defense); K.S.A. 21-5231 (self-defense immunity).

13

And as the State asserts in its brief, protecting Kansans from dangerous felons is a compelling state interest. See *In re Fowles*, 89 Kan. 430, 435, 131 P. 598 (1913) ("The doctrine was announced that it is the duty of the state to protect the lives and persons of its citizens and others temporarily resident therein against unlawful violation or injury, whether committed by citizens or others."). Thus, K.S.A. 21-6304(a)(2)'s infringement to an offender's right to bear arms under section 4 is narrowly tailored to the government's interest in protecting the public. The statute passes the strict scrutiny test.

Alternatively, focusing on the language of section 4 compels the same result. It grants a person the right to keep and bear arms for certain listed purposes, "and for any other *lawful purpose*." (Emphasis added.) Kan. Const. Bill of Rights, § 4. This last clause acts as a "reservation of rights to the government to declare some possession 'unlawful.'" *Foster*, 60 Kan. App. 2d at 261 (Arnold-Burger, C.J., concurring). "So as with any constitutional right, even a fundamental one, in this case the voters have indicated a desire to place certain limits on the constitutional right of the people to possess a firearm." 60 Kan. App. 2d at 261 (Arnold-Burger, C.J., concurring). And as Chief Judge Arnold-Burger explained in her concurrence, "[t]here would be no reason for the granting of the right to possess firearms for any other *lawful* purpose unless there was a corresponding prohibition aimed at possessing a firearm for an *unlawful* purpose." 60 Kan. App. 2d at 261 (Arnold-Burger, C.J., concurring). This means that section 4 intentionally allows for some infringement of the right to bear arms. And for over 50 years before the amendment of section 4, it was unlawful for convicted felons to possess a firearm in Kansas. See 60 Kan. App. 2d at 262 (Arnold-Burger, C.J., concurring) ("[A] provision similar to K.S.A. 21-6304[a][2] has been in the Kansas statutes, in some form, since at least 1969 under a different statute number, K.S.A. 21-4204[a][3]. See L. 1969, ch. 180, § 21-4204."). We are thus unpersuaded by Dechant's contention that mere possession of a firearm, without more, is always for a lawful purpose by everyone, under Kansas law.

14

No matter what analytical path we may take, we arrive at the same conclusion—K.S.A. 21-6304(a)(2) does not violate section 4. Thus, we conclude that K.S.A. 21-6304(a)(2) is not facially unconstitutional under section 4 of the Kansas Bill of Rights or under the Second Amendment to the United States Constitution. Dechant's conviction stands.

II.    *Did the district court abuse its discretion by admitting a photograph of Dechant with a firearm?*

Dechant next argues that the district court abused its discretion by admitting a photograph of him with a firearm because the State failed to lay a proper foundation for admission of the photo. He contends that no witness testified about who took the photograph, when the photograph was taken, and, most importantly, whether it was a likeness of what it purported to be. Dechant's counsel specifically and contemporaneously objected to the admission of the photograph based on lack of foundation and relevance, properly preserving this issue for appeal. See K.S.A. 60-404; *State v. Jenkins*, 311 Kan. 39, 44, 455 P.3d 779 (2020).

At trial, no elaboration was made on the record—the State offered the photograph, defense counsel objected, and the district court immediately overruled that objection. As an aside, we note the judge's prior knowledge, as established on the record at Dechant's first trial. The same district court judge presided over both of Dechant's trials and was familiar with the photograph. At Dechant's first trial, the parties made a record outside the presence of the jury about this photograph and its foundation. The parties agreed that the foundation for this picture would be scant, largely because Dechant desired to limit evidence about his parole supervision. The district court allowed the parties to voir dire Underwood about the photo, and then it found sufficient foundation to admit the photo:

"As it relates to foundation, ultimately, this is part and parcel of the offense leading up to the search and ultimately the charge of the defendant in this case . . . , and it was the underlying reason for the search. Ms. Underwood received an e-mail with a picture of what looked like to her as [Dechant] in possession of a firearm. That is a parole violation. She had reason to believe that [Dechant] was in violation of his parole in order for a search to take place. We are not here for a—nor has it been filed, as I understated it, a motion to exclude what was found based upon the search not being a good search. That being said, I believe that there is foundation. Certainly, you will have an opportunity to ask questions of the witness about—similar to what you've already asked about—her knowledge of what the photo shows, when and where. But I think it is reasonable upon receiving such a photograph of an individual that you have on parole to assume that there is a violation taking place and to order the search, which is ultimately the fruit of what we are here for in the course of this. So I believe there is adequate foundation for the admission."

*Standard of Review*

On review of "a decision to admit evidence, appellate courts consider first whether the evidence is relevant. . . . If the court finds the evidence is relevant, the second step requires the court to apply the statutory rules governing the admission or exclusion of evidence. [Citations omitted.]" *State v. Phillips*, 295 Kan. 929, 947, 287 P.3d 245 (2012). Dechant does not contest the relevance of the photograph, thus we move to the second step.

"The question of whether evidentiary foundation requirements have been met is left largely to the discretion of the district court. Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view. [Citation omitted.]" *State v. Ernesti*, 291 Kan. 54, 64-65, 239 P.3d 40 (2010); see also *State v. Kendig*, 233 Kan. 890, 892, 666 P.2d 684 (1983) ("Admission of demonstrative photographs lies within the broad discretion of the trial judge."). A district court judge's mistake of fact or law also qualifies as an abuse of

16

discretion. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). Finally, an appellate "court reviews the factual underpinnings of a district judge's legal ruling for substantial competent evidence. 'Substantial competent evidence is "evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."' [Citation omitted.]" *Jenkins*, 311 Kan. at 45.

*Analysis*

"Providing an adequate foundation prevents the finder of fact from being exposed to inadmissible evidence. [Citation omitted.]" *State v. Banks*, 306 Kan. 854, 866, 397 P.3d 1195 (2017). The proponent of the evidence is required to lay a foundation before it may be admitted into evidence. 306 Kan. at 865-66.

"Photographs and motion pictures may be admitted in evidence if it is established that they accurately represent the person, place, or thing photographed." *State v. Woolridge*, 2 Kan. App. 2d 449, 450, 581 P.2d 403 (1978) (citing *Landrum v. Taylor*, 217 Kan. 113, 535 P.2d 406 [1975]; *Howard v. Stoughton*, 199 Kan. 787, 433 P.2d 567 [1967]); see also *State v. Shoemake*, 228 Kan. 572, 574, 618 P.2d 1201 (1980) ("We have held on a number of occasions that photographs are admissible upon proper foundation and identification if they accurately represent matters relevant to the issues in the case.").

K.S.A. 60-464 echoes these principles. This statute requires the authentication of evidence and provides "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." K.S.A. 60-464(a). Yet the burden of authentication is slight:

> "The burden of authentication is 'minimal' or 'slight,' and there is 'no precise formula' for
> district judges to determine authenticity. [*Robinson*,] 303 Kan. at 225. '[I]ndirect or

17

circumstantial evidence' can suffice. 303 Kan. at 225. A proponent need only proffer evidence upon which a reasonable juror could conclude that the message is what the proponent represents it to be. 303 Kan. at 226. After that, 'discrepancies and other conflicting evidence go to the weight, not the admissibility, of the writing.' 303 Kan. at 226." *Jenkins*, 311 Kan. at 50-51.

See also K.S.A. 60-401(m) (including a photograph in the definition of "[w]riting" as used in the rule of evidence).

Against that legal background, we review the facts again. The photograph—State's Exhibit 2—depicts Dechant and James together with James' hand on Dechant's waist and Dechant's arm wrapped around James with his hand resting on her buttocks, in an inherently romantic pose. The photo shows Dechant's reflection in a mirror and appears to have been taken by Dechant using a cellphone. Dechant is wearing a white tank top, blue jeans, and a black canvas belt, and a firearm is tucked in his waistband.

Underwood testified that as his parole supervisor since November 2022, she was familiar with Dechant's appearance. She identified Dechant in the photo. She also testified that she was familiar with the prison's ability to intercept and review emails, which she described as what happened here and how she received the photo. She identified the photo as a fair and accurate representation of what the prison had sent her.

Underwood admitted that she did not know exactly when this photo was taken, but from circumstantial evidence presented at trial one could reasonably infer that the photograph was taken after Dechant was released on parole. This is because James did not become Dechant's romantic partner until after that date and the pose by Dechant and the female in the photo supports the reasonable inference that the two were in a romantic relationship.

18

Dechant argues that Underwood did not take the photograph, did not know who took the photograph, nor was she present when it was taken, so she cannot lay a good foundation for the photograph. But these facts do not seriously undermine the photograph's foundation because "under Kansas law, the person who takes the photograph need not be the person who identifies the photograph in order for a proper foundation to be laid." *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009).

We find sufficient competent evidence supports the foundation for the admission of the photograph. Underwood testified that it was Dechant in the photograph and that he and James did not begin their romantic relationship until after his release on parole. Thus circumstantial evidence indicates the photo was taken some time between November 2022 and January 2023. Underwood also testified about how the photo was acquired—by intercepting an email sent to another inmate. She stated that the photograph as offered was a true and accurate representation of the one she had received from the prison. Given this evidence, we cannot say that no reasonable person would have ruled the way the district court did, as is necessary to show an abuse of discretion here. See *Ernesti*, 291 Kan. at 64-65. Thus, Dechant fails to show that the district court abused its discretion by admitting the photograph of him with a firearm.

Affirmed.